UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

LISA MARIE C.,

       Plaintiff,

v.            5:23-cv-1025
            (GTS/TWD)

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

_____

APPEARANCES:      OF COUNSEL:

HILLER COMERFORD    JUSTIN M. GOLDSTEIN, ESQ.
INJURY & DISABILITY LAW
6000 North Bailey Avenue – Suite 1a
Amherst, NY 14226
Counsel for Plaintiff

SOCIAL SECURITY ADMINISTRATION  GEOFFREY M. PETERS, ESQ.
OFFICE OF THE GENERAL COUNSEL
6410 Security Boulevard
Baltimore, MD 21235
Counsel for Defendant

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>REPORT AND RECOMMENDATION</u>

### I.  INTRODUCTION

  Lisa Marie C. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or

"Defendant"), denying her applications for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI"). Dkt. No. 1. The matter was referred to the undersigned

for a report and recommendation by the Hon. Glenn T. Suddaby, United States District Judge,

pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).

Both parties filed briefs, which the Court treats as motions under Federal Rule of Civil

Procedure Rule 12(c), in accordance with General Order 18.  Dkt. Nos. 11, 12.  Plaintiff filed a

reply brief.  Dkt. No. 13.  For the reasons set forth below, the Court recommends Plaintiff's

motion for judgment on the pleadings be denied and Defendant's motion be granted.

## II.    BACKGROUND

Plaintiff was born in 1968, obtained her GED, and previously worked as a cashier,

receptionist/secretary, Certified Nurse Assistant, health care coordinator, and promoter/sales.  T.

269-70, 275.[1]  She protectively filed her applications for DIB and SSI on June 1, 2021.  *Id*. at

243-55.  Plaintiff alleged disability beginning November 2, 2020, due to fibromyalgia, chronic

back pain, daily headaches, anxiety, sadness, panic attacks, interrupted sleep, Irritable Bowel

Syndrome, chronic constipation, diverticulitis, chronic shoulder issues, and plantar fasciitis.  *Id*.

at 268.  Her claims were initially denied on October 12, 2021, and upon reconsideration on

November 30, 2021, after which Plaintiff requested a hearing before an Administrative Law

Judge ("ALJ").  *Id*. at 86-88, 119, 126-175.

Plaintiff appeared and testified at a telephone hearing before ALJ Kenneth Theurer on

June 1, 2022.  *Id*. at 30-57.  Vocational Expert ("VE") Peter Manzi also testified.  *Id.*  On June

13, 2022, the ALJ issued a written decision finding Plaintiff was not disabled under the Social

Security Act.  *Id*. at 13-24.  On June 27, 2023, the Appeals Council denied review, making the

---

[1]  The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative
Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein
will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system.
Citations not made to the Administrative Transcript will use the page numbers assigned by the
Court's CM/ECF electronic filing system.

ALJ's decision the final decision of the Commissioner. *Id.* at 1-3. This appeal followed. Dkt. No. 1.

## III.    RELEVANT LEGAL STANDARDS

### A.    Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence" is evidence amounting to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted). Where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial

evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). A reviewing court cannot substitute its interpretation of the administrative record in place of the Commissioner's if the record contains substantial support for the ALJ's decision. *See Rutherford*, 685 F.2d at 62.

### B.    Standard for Benefits

To be considered disabled, a plaintiff seeking disability benefits must establish he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Additionally, the claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).[2] The Social Security Administration regulations outline a five-step process to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are

---

[2]  While the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).  The claimant bears the burden of proof regarding the first four steps.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  If the claimant meets his or her burden of proof, the burden shifts to the Commissioner at the fifth step to prove the claimant is capable of working.  *Id*.

## IV.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims.  T. 13-24.  At step one, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2024, and has not engaged in substantial gainful activity since November 2, 2020, the alleged onset date.  *Id*. at 16. Proceeding to step two, the ALJ determined Plaintiff has the following severe impairments: "degenerative disc disease of the lumbar spine, osteoarthritis of the bilateral knees, tendinosis of the shoulder, a heel spur, fibromyalgia, DVT, obesity, a depressive disorder and an anxiety disorder."  *Id*.  At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  *Id*. at 17.

The ALJ next determined Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with additional limitations.  *Id*. at 19.  The ALJ found Plaintiff could "only occasionally climb ladders/ropes/scaffolds, climb ramps/stairs, balance, stoop, kneel, crouch and crawl.  She can perform only occasional overhead reaching with the left, upper extremity.  The claimant is

limited to simple, routine and repetitive tasks in a work environment involving only simple, work-related decisions, with few, if any, workplace changes.  She can have no more than occasional contact with supervisors, coworkers and the public." *Id*. at 19.  At step four, the ALJ determined Plaintiff could not perform any of her past relevant work.  *Id*. at 22.  At step five, based on the testimony of the VE, considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded there were jobs Plaintiff could perform in significant numbers in the national economy such as garment folder, linen grader, and bagger.  *Id*. at 23-24.

Accordingly, the ALJ determined Plaintiff was not disabled, as defined by the Social Security Act, from the alleged onset date, November 2, 2020, through the date of decision, June 13, 2022.  *Id*. at 24.

## V.    DISCUSSION

Plaintiff argues "[t]he ALJ erred when failing to identify substantial evidence supporting the residual functional capacity finding and erred when failing to evaluate the medical opinions and symptomology pursuant to the appropriate legal standards."  Dkt. No. 11 at 10-25.  In response, Defendant argues substantial evidence supports the ALJ's RFC determination and the ALJ properly evaluated the opinion evidence.  Dkt. No. 12 at 4-24.

The RFC is an assessment of "the most [Plaintiff] can still do despite [her] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  An RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ.  *Id*. §§ 404.1527(d)(2), 416.927(d)(2); *see Curry v. Comm'r Soc. Sec.*, 855 F. App'x 46 (2d Cir. 2021) ("An RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear.").  In general, the ALJ is obligated to formulate Plaintiff's RFC based on the record as a whole, not just upon the medical opinions alone.

*Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018). The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical source. 20 C.F.R. §§ 404.1527, 404.1527, 404.1545(a)(3), 404.1546(c), 416.927(d), 416.945(a)(3), 416.946(c). Although the ALJ has the responsibility to determine the RFC based on all the evidence in the record, the burden is on Plaintiff to demonstrate the existence of functional limitations that preclude any substantial gainful activity. *Id*. §§ 404.1512(c), 404.1527(e)(2), 404.1545(a), 404.1546(c), 416.912(c), 416.927(e)(2), 416.945(a), 416.946(c); *see Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (ultimately, it is plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ).

In making the RFC determination, the ALJ stated he considered all of Plaintiff's symptoms, and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and SSR 16-3p. T. 19-20. The ALJ further stated he considered opinion evidence and prior administrative medical findings pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. *Id*. at 20. The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that Plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id*. at 21.

Plaintiff more specifically argues the ALJ erred in failing to follow the regulations when evaluating the opinion evidence of State agency reviewers and consultants regarding Plaintiff's physical impairments and he cherry-picked various findings in the opinions to support his

determination.  Dkt. No. 11 at 13-20.  Plaintiff also asserts the ALJ erred in evaluating the opinions of psychological consultants and did not credit Plaintiff's complaints.  *Id.* at 20-25.

### A.        Standards for Evaluation of Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[3] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the updated regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion."  *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors."  20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions."  *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" forming the foundation of the previous treating source rule.  *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

---

[3]  Plaintiff's application was dated June 1, 2021.  T. 243-55.  Thus, the new regulations apply in her case.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the current regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* §§ 404.1520c(b)(3), 416.920c(b)(3).

### B.    Physical Limitations and Related Opinion Evidence

State agency consultant Dr. Gallagher reviewed the records and rendered an opinion on October 7, 2021, that Plaintiff had the RFC to perform a range of light work. T. 65-69, 79-83. Specifically, Dr. Gallagher opined Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for a total of six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. *Id.* at 65-66, 79-80. Further, the reviewer opined Plaintiff was unlimited in pushing and/or pulling other than the lifting and

carrying restrictions, and could occasionally climb ramps, stairs, ladders, ropes, and scaffolds; she could occasionally stoop, kneel, crouch, and crawl.  *Id.* at 66-67, 80-81.  Dr. Gallagher found Plaintiff limited to occasional left overhead reaching, but unlimited in handling, fingering, and feeling.  *Id.* at 67, 81.  On reconsideration in a report dated November 29, 2021, Dr. Abueg corroborated the opinions of Dr. Gallagher.  *Id.* at 97-100, 112-115.

The ALJ found these opinions persuasive because they were supported by citations to the record showing Plaintiff had "[m]ild degenerative changes of the lumbar spine, mild diffuse rotator cuff tendinosis, mild knee issues and history of a DVT."  *Id.* at 20; *see also id.* at 68, 82, 100, 115.  The ALJ further stated these opinions were consistent with other treatment records showing Plaintiff had a normal gait, the shoulder issues improved with treatment, and the DVT was successfully treated.  *Id.* at 20; *see also id.* at 355, 488, 502, 507, 546, 566.  The ALJ also pointed out Dr. Lorensen's exam, as set forth more fully below, showed only "one trigger point, as well as full strength in the upper and lower extremities."  *Id.* at 20; *see also id.* at 489.  In expanding on the important factors of supportability and consistency, the ALJ identified Plaintiff's conservative course of treatment, confirmed these medical consultants reviewed the record, and explained they have program and professional expertise.  *Id.* at 20.

Consultative examiner Dr. Lorensen conducted an internal medicine examination of Plaintiff on October 1, 2021.  *Id.* at 487-90.  After listing all of Plaintiff's complaints, Dr. Lorensen noted Plaintiff's reported activities of daily living which included cooking three to four days a week, cleaning two times a week, and doing laundry and shopping once a week.  *Id.* at 488.  She showered three times a week and watched TV and listened to the radio.  *Id.*  On exam, Plaintiff was not in any acute distress; she had a normal gait and stance; she did not need any assistive device and needed no help changing for the exam or getting on and off the exam table;

and she was able to rise from a chair without difficulty.  *Id.* at 488.  However, she could not walk on heels and toes and was unable to squat.  *Id.*

The musculoskeletal exam revealed Plaintiff had a full range of motion of the cervical spine, right shoulder, elbows, forearms, wrists, fingers, and ankles.  *Id.* at 489.  Her thoracic spine exam was normal, and she exhibited a reduced range of lumbar flexion, but otherwise showed a full range of motion in her lumbar spine and straight leg raising was negative bilaterally.  *Id.*  Plaintiff had a reduced range of motion in her left shoulder, hips and knees, but no sensory deficits were noted, and she exhibited 5/5 in strength in the upper and lower extremities with no muscle atrophy.  *Id.*  Hand and finger dexterity were intact, and her grip strength was 5/5 bilaterally.  *Id.*  Deep tendon reflexes were physiologic and equal in the upper and lower extremities; she had full range of motion in her ankles; and her joints were without any deformity, swelling, or effusion.  *Id.*  She exhibited one positive trigger point for fibromyalgia.  *Id.*

Dr. Lorensen diagnosed Plaintiff with fibromyalgia, migraines, problems with constipation, back and left shoulder pain, obesity, and DVT in the left leg.  *Id.* at 490.  Ultimately, Dr. Lorensen opined that Plaintiff had "[n]o gross limitations for sitting, standing, walking, and using the hands.  Mild to moderate limitations for bending, lifting, carrying, reaching, and climbing."  *Id.*

The ALJ found Dr. Lorensen's opinion persuasive after considering the most important factors of supportability and consistency.  *Id.* at 20-21.  As to supportability, the ALJ noted the opinion was based on Dr. Lorensen's examination of Plaintiff as outlined above which showed mostly normal findings, with somewhat reduced range of motion of the left shoulder, hips, and knees.  *Id.*  He also noted it is consistent with the opinions of medical consultants and Plaintiff's

conservative course of treatment. *Id.* at 21. While he did not list every finding of Dr. Lorensen's exam, he was not required to do so. *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) ("An ALJ does not have to state on the record every reason justifying a decision" or "discuss every piece of evidence submitted.") (citation omitted). "An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Id.* (quoting *Black v. Apfel,* 143 F.3d 383, 386 (8th Cir.1998)).

The ALJ, in noting Dr. Lorensen's opinion was consistent with the other opinions of the State agency reviewers, provided further support for the persuasiveness of the opinion. The ALJ is required to formulate Plaintiff's RFC based on the record as a whole. *See Trepanier*, 752 F. App'x at 79. As stated in the regulations, an RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Indeed, it is the responsibility of the ALJ to determine Plaintiff's RFC based on all the evidence in the record including, but not limited to, statements provided by medical sources. *Id.* §§ 404.1527(d), 404.1545(a)(3), 404.1546(c), 416.927(d), 416.945(a)(3), 416.946(c). Moreover, "[a]n ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability." *Angela H.-M. v. Comm'r of Soc. Sec.*, 631 F. Supp. 3d 1, 9 (W.D.N.Y. 2022) (citation and emphasis in original omitted); *see also*, *e.g.*, *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 204 (N.D.N.Y. 2012) (citations omitted) (stating it is "well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability").

Plaintiff argues the ALJ cherry picked evidence in the record, mischaracterized the medical records, and "[f]ailed to account for Plaintiff's cyclical symptomology based upon the administration of injections every 3 months."  Dkt. No. 11 at 13-16.  To the contrary, the ALJ indicated that the opinions of Drs. Gallagher, Abueg, and Lorensen were consistent with the evidence as a whole.  T. 20-21.  While Plaintiff exhibited an antalgic gait upon two examinations in 2021 when seen by treating orthopedic provider, Dr. Ortiz, *id*. at 356, 577, Dr. Ortiz does not chart any issues with her gait on any other treatment encounters, many of which were for complaints about her knees, legs, and feet.  *Id*. at 339, 348, 365, 371, 378, 382, 386, 390, 399, 555, 561, 566, 571, 583-84.  "An ALJ is entitled to consider both what the record does say and what it does not say."  *Christopher W. v. Comm'r of Soc. Sec.*, No. 3:23-CV-1106 (DJS), 2024 WL 3846069, at *4 (N.Y.N.D. Aug. 16, 2024) (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983)).

Additionally, bilateral knee x-rays showed only mild to moderate degenerative changes. T. 360-61, 586.  Dr. Ortiz specifically noted on December 21, 2021, that new bilateral knee x-rays "revealed no progression of her minimal to moderate degenerative changes."  *Id.* at 566. Examinations by other treatment providers during the relevant period revealed a normal gait and full strength in all her extremities.  *Id.* at 409, 417, 488, 489, 502, 529, 536, 546.

The record also shows Plaintiff's shoulder improved with treatment.  *Id.* at 355 (left shoulder dysfunction has improved "tremendously"), 566 (left shoulder injection helped "wonderfully").  Her DVT improved with medication.  *Id.* at 507 (leg does not bother her and she is doing well on medication; musculoskeletal exam showed normal range of motion and she exhibited no swelling in her lower extremities).  She had one fibromyalgia trigger point during the exam by Dr. Lorensen.  *Id.* at 488-89.  In general, her treatment was conservative consisting

13

of medication and steroid injections.  *Id.* at 45, 463, 487-89, 507, 566; *see also id.* at 348

(Plaintiff did not want surgery and "will continue with her other conservative modalities").

Plaintiff essentially argues the ALJ failed to properly articulate the supportability and

consistency factors when evaluating the opinions of Drs. Gallagher, Abueg, and Lorensen.  Dkt.

No. 11 at 13-20; Dkt. No. 13 at 1-4.  The Court disagrees.  As the Commissioner points out, the

ALJ referred to the record containing the opinions of these physicians, who each provided a

detailed explanation of their findings and are consistent with each other.  Dkt. No. 12 at 8-11; T.

20-21; *see, e.g.*, *Holly R. v. Comm'r of Soc. Sec.*, No. 23-CV-0132, 2023 WL 8797938, at *2

(W.D.N.Y. Dec. 19, 2023).  The ALJ discussed the medical records and the opinions upon which

he relied to assess Plaintiff's RFC.  *See* T. 20-22.  The RFC largely tracks the opinions of record

the ALJ found persuasive and the ALJ was not obligated to adopt every limitation set forth in a

medical opinion he found persuasive.  *See Edward J. v. Kijakazi*, No. 5:21-CV-150 (DJS), 2022

WL 4536257, at *5 (N.D.N.Y. Sept. 28, 2022).  Nor, contrary to Plaintiff's argument, was the

ALJ required to accept Plaintiff's subjective complaints regarding her limitations.  *See* Dkt. No.

11 at 19-20.  The ALJ considered Plaintiff's testimony at the hearing and the above opinions and

reasonably determined Plaintiff retained the RFC to perform light work with the additional

limitations.

For instance, the ALJ clearly explained his determination that Plaintiff could perform

light work was based on the opinions of Drs. Gallagher, Abueg, and Lorensen.  T. 20.  He went

on to explain why those reports were persuasive and showed how the medical and other evidence

of record supported a light RFC.  *Id.* at 21-22.  Moreover, the ALJ clearly considered Plaintiff's

obesity finding it a severe medical impairment and explicitly considered her body mass index.

*Id.* at 16-17.  He considered her complaints of chronic pain but found them not entirely

consistent with the medical evidence.  *Id.* at 20-21.  The records show Plaintiff obtained relief from pain with the conservative treatment of injections.  *Id.* at 339, 348, 355, 371, 378, 382, 555, 577 (plantar fascia pain improved and resolved with injections); 339, 348, 371, 378, 555, 561 (ankle injections improved pain and "helped wonderfully"); 343, 355, 371-72, 543, 566, 571, 584 (shoulder injections provided pain relief); 356, 464, 555, 577 (knee injections relieved pain).  Thus, Plaintiff's pain improved with treatment, although it did not completely disappear, and the RFC accounts for the complaints of pain by limiting Plaintiff to light work with restrictions of occasionally climbing, balancing, stooping, kneeling, crouching, crawling, and overhead reaching with the left arm.  *Id.* at 19.

Moreover, the ALJ properly explained how Plaintiff's complaints were inconsistent with the record as a whole.  *Id.* at 21.  For example, imaging of lumbar spine and knees generally showed mild degenerative changes.  *Id.* at 360-61, 481-82.  X-rays of her left foot and ankle showed a bone spur.  *Id.* at 455, 526.  An x-ray of her right ankle showed mild soft tissue swelling around the joint.  *Id.* at 454.  Dr. Lorensen's exam of Plaintiff showed nearly full range of motion of her back and straight leg raising was normal.  *Id.* at 489.  While her gait was antalgic on only two exams out of the many encounters with Dr. Ortiz, *id.* at 356, 577, she otherwise exhibited a normal gait at Dr. Lorensen's exam and on two other examinations by other providers.  *Id.* at 488, 502, 546.  Her shoulder improved with treatment, and she exhibited full range of motion.  *Id.* at 355, 371.  She had full range of motion in her neck.  *Id.* at 473, 483.  Thus, the ALJ committed no error in this regard since conflicts in the record are for the Commissioner to resolve.  *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

In sum, the Court finds the ALJ properly evaluated the opinion evidence regarding Plaintiff's physical limitations because Plaintiff has not shown any evidence of record or other

opinion that would support greater limitations. *See Beaman v. Comm'r of Soc. Sec.*, No. 1:18-CV-01344, 2020 WL 473618, at \*6 (W.D.N.Y. 2020) ("Ultimately, it is Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ."). Plaintiff essentially disagrees with the ALJ's weighing of the evidence, and it is not the providence of the Court to reweigh the evidence. *Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) (summary order) (deferential standard of review prevents the Court from reweighing the evidence). However, as noted, it is Plaintiff's burden to show that greater restrictions are required by the evidence, and she has not done so in this instance. *See Sandra D. v. Comm'r of Soc. Sec. Admin.*, No. 5:20-CV-1067 (LEK/ATB), 2022 WL 344058, at \*5 (N.D.N.Y. Feb. 4, 2022) (noting that "a plaintiff bears the burden of demonstrating disability and the necessity of a greater RFC") (citing *Smith*, 740 F. App'x at 726).

Accordingly, the Court finds no error in the ALJ's evaluation of the opinion evidence regarding Plaintiff's physical limitations. The ALJ applied the correct legal standards, and the RFC is supported by substantial evidence. Hence, remand is not required on this basis.

### C.    Mental Limitations and Related Opinions Evidence

Regarding Plaintiff's mental RFC, the ALJ found Plaintiff could perform "simple, routine and repetitive tasks in a work environment involving only simple work-related decisions, with few, if any, workplace changes. She can have no more than occasional contact with supervisors, coworkers and the public." T. 19. Plaintiff challenges this RFC by arguing the ALJ erred in finding the opinions of Dr. Shapiro and the State agency reviewing psychological consultants less persuasive because the ALJ did not credit Plaintiff's allegations of debilitating limitations; he rejected the more limiting parts of Dr. Shapiro's opinion and relied on his own lay opinion; and he did not explain his findings. Dkt. No. 11 at 20-25.

In response, at the outset, the Commissioner notes that Plaintiff only vaguely and superficially argues that the ALJ erred in evaluating the mental prior administrative findings of Drs. Bhutwala and Inmann.  Dkt. No. 12 at 19; *see also* Dkt. No. 11 at 20-25.  As such, the Commissioner argues Plaintiff has waived any objections to the ALJ's consideration of these State agency reviewers' opinions.  Dkt. No. 12 at 19.  The Court agrees with the Commissioner in this regard since issues not raised in the brief are waived.  *See generally* N.D.N.Y. General Order No. 18C(1)D ("The issues before the Court are limited to the issues properly raised in the briefs.").  However, the Court finds this inconsequential since the reason stated by the ALJ in finding their opinions less persuasive is because they found non-severe mental impairments and the ALJ found sufficient evidence that Plaintiff had a severe mental impairment at step two of the sequential review based upon Plaintiff's subjective complaints.  T. 17, 22; *see also id*. at 63, 77-78, 94-95, 109-10.

More to the point, Plaintiff argues the ALJ did not credit her allegations of debilitating mental limitations and "erred when rejecting the more limiting portions of Dr. Shapiro's opinion and when relying on his own lay opinion to formulate the RFC finding."  Dkt. No. 11 at 21.  As to the opinion of Dr. Shapiro, the ALJ found it "less persuasive" because it was not consistent with her own findings on examination of Plaintiff.  T. 22.  In further addressing the supportability and consistency factors, the ALJ noted Plaintiff did not have any record of inpatient or outpatient mental health treatment.  *Id.*

At the evaluation, Dr. Shapiro noted in Plaintiff's psychiatric history that Plaintiff had never been hospitalized for psychiatric problems, never had any outpatient mental health treatment, and was not currently receiving mental health treatment, nor was she on any psychiatric medications.  *Id.* at 492.  Plaintiff subjectively indicated she had difficulty falling and

staying asleep, had a variable appetite, and was depressed, unmotivated, and lethargic. *Id.* She reported having dysphoric moods, tended to avoid others except for her immediate family, and she "complained of short-term memory deficits and difficulty concentrating." *Id.* at 492-93. She denied substance abuse, legal issues, and any family history of psychiatric, substance abuse, or learning problems. *Id.* at 493.

Upon examination, she was cooperative and "[h]er manner of relating, social skills, and overall presentation was adequate." *Id.* Her appearance was normal; she was well-groomed; her posture and motor behavior were normal; and her eye contact was appropriate. *Id.* Her speech and thought processes were normal, but her affect and mood were anxious. *Id.* Her sensorium was clear; she was properly oriented in all three spheres; her attention and concentration were intact; and she could do counting, simple calculations, "and serial 7s from 100 on her fingers." *Id.* at 494. Her recent and remote memory skills were intact, and she was able to recall three out of three objects immediately and after a delay, and she could "accurately recall 6 digits forward and 4 digits backward." *Id.* She was functioning in the low range of intelligence and her "[g]eneral fund of information was a little bit below average." *Id.* Her insight and judgment were fair, and Dr. Shapiro deemed "[t]he results of the mental status evaluation consistent . . . with her vocational and educational history." *Id.* With regard to her activities of daily living, Plaintiff reported she could dress, bathe and groom herself although she sometimes needed help from her daughter if she felt dizzy. *Id.* She drove, prepared food three-to-four times a week, cleaned three times a week, and did laundry and shopped once per week. *Id.* She manages her money, but her daughter sometimes checks it for her; and she only socializes with her ex-husband, her daughters, her granddaughters, and some friends. *Id.* She has a good relationship

with her family, has no hobbies or special interests, and she spends her days "watching her granddaughter play, watching TV, and listening to the radio." *Id.*

In accordance with this evaluation, Dr. Shapiro opined Plaintiff had no limitations in "understanding, remembering, or applying simple or complex directions and instructions or using reason or judgment to make work-related decisions." *Id.* at 495.  Dr. Shapiro also found Plaintiff had no limitations in sustaining an ordinary routine and regular attendance at work, in maintaining personal hygiene, or in awareness of normal hazards and taking appropriate precautions.  *Id.*  In sustaining concentration and performing at a consistent pace, Dr. Shapiro noted a mild limitation.  *Id.*  Plaintiff  had a "[m]oderate limitation interacting appropriately with supervisors, coworkers, and the public" and a "[m]oderate to marked limitation regulating emotions, controlling behavior, and maintaining well-being." *Id.*

As stated above, the ALJ found Dr. Shapiro's opinion "less persuasive" based upon the most important factors of supportability and consistency. *Id.* at 22; *see also* 20 C.F.R. §§ 404.1520c(c)(1) and (2), 416.920c(c)(1) and (2).  The ALJ noted Dr. Shapiro's opinions were not consistent with her own findings on exam regarding the stated moderate limitations interacting with others and the moderate-to-marked limitation regulating emotions, controlling behavior, and maintaining well-being.  T. 22.  In that regard, Dr. Shapiro specifically found Plaintiff's "demeanor and responsiveness to questions was cooperative.  Her manner of relating, social skills, and overall presentation were adequate." *Id.* at 493.  While Dr. Shapiro found Plaintiff's mood and affect anxious, the remainder of the exam was largely normal albeit with fair insight and judgment.  *Id.* at 493-94.  Dr. Shapiro also noted Plaintiff was not on any psychiatric medication and had never had any inpatient or outpatient mental health treatment, including at the time of the consultative exam.  *Id.* at 92.

Moreover, Dr. Shapiro's opinion regarding moderate limitations in interacting with others and moderate-to-marked limitations in regulating emotions, controlling behavior and maintaining well-being is inconsistent with the record as a whole.  Plaintiff had no mental health treatment during the relevant period, and there are numerous findings in the treatment records of normal psychiatric exams.  *See id.* at 429 ("Fluent speech" and "Psych: Normal Affect and Good eye contact.  Organized, logical, and fluent"); 445 ("Psych Normal: Normal Affect"); 502 ("Normal affect"); 529 ("Fluent speech" and "Psych Normal: Normal Affect"); 536 (same); 546 ("Psych Normal; Normal Affect").  She is described as a "pleasant woman" when interacting with her orthopedic treating physician, Dr. Diaz.  *Id.* at 355, 386, 560.  In her interactions with her primary care provider, Dr. Primm, she consistently "appears healthy" on constitutional exam findings.  *Id.* at 457, 464, 467, 471, 476, 484, 600, 603, 606, 609, 612, 619.  Plaintiff complained of feeling that her "depression is worsening" at only one treatment encounter with Dr. Primm, *id.* at 611, and that is the only encounter where a depressive disorder is listed in Dr. Primm's assessments.  *Compare id.* at 612, *with id.* at 457, 464, 467, 472, 476-77, 484-85, 600, 603, 606-07, 609, 615-16, 620.  Plaintiff confirmed at her hearing that she was not receiving any mental health treatment.  *Id.* at 48.

Moreover,  although the ALJ found Dr. Shapiro's opinion "less persuasive," the ALJ established an RFC that restricts Plaintiff to "simple, routine and repetitive tasks in a work environment involving only simple, work-related decisions" and she could "have no more than occasional contact with supervisors, coworkers and the public."  *Id.* at 19.  Thus, the moderate limitations in interacting with others, and moderate-to-marked limitations in regulating emotions, controlling behavior, and maintaining well-being opined by Dr. Shapiro were indeed incorporated into the RFC.  Accordingly, the ALJ properly discharged his duty to account for

these mental limitations by limiting Plaintiff to simple tasks with occasional contact with others. *See, e.g.*, *Alexandrea R.R. v. Berryhill*, No. 5:18-CV-121 (DNH), 2019 WL 2269854, at *7 (N.D.N.Y. May 28, 2019) (finding the ALJ properly assessed several limitations in the plaintiff's ability to perform work-related mental tasks by including a number of specific restrictions in recognition of plaintiff's ability to handle work-related stress). Plaintiff has failed to explain why additional limitations are required.

For the forgoing reasons, the Court finds the ALJ properly considered the medical opinions concerning Plaintiff's mental limitations. The ALJ incorporated the findings of consultative examiner Dr. Shapiro into the RFC, and the ALJ's decision reflects adequate consideration of the record as a whole. *Desiree S. v. Comm'r of Soc. Sec.*, No. 3:22-CV-0985 (MAD/DEP), 2023 WL 7688690, at *6 (N.D.N.Y. Sept. 8, 2023) ("In assessing the ALJ's findings, the decision must be read as a whole."), *report and recommendation adopted*, 2023 WL 6578958 (N.D.N.Y. Oct. 10, 2023).

Overall, based upon a careful review of the record, and affording the ALJ's decision the appropriate deference, the Court concludes substantial evidence supports the ALJ's RFC determination. Accordingly, remand is not necessary.

## VI.    CONCLUSION

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) be **DENIED**, and it is further

**RECOMMENDED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) be **GRANTED**, and the Commissioner's decision be affirmed.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:  September 3, 2024
        Syracuse, New York


Therese Wiley Dancks
United States Magistrate Judge